## The People v. James Harper.

*Criminal law—Homicide—Charge to jury.*

1. A statement by the prosecuting attorney in his closing argument to the jury in a homicide case that the people were not bound by the testimony of a witness whose testimony they were bound to introduce, except in so far as it was believed to be true, is not open to objection.

2. The failure of the court in his charge in a homicide case to give a technical definition of the crime of manslaughter cannot be assigned as error, where upon the theory of the respondent he was guilty of that offense, and which theory the court plainly placed before the jury with instruction that, if found to be true, the respondent was guilty of manslaughter.

3. Where on the trial of a homicide case it was admitted that the respondent was guilty of manslaughter, but the theory of the defense was that he was innocent of the higher offense charged because of a want of criminal intent, a charge which gives to the respondent the presumption of innocence of such intent, and the benefit of any reasonable doubt the jury might entertain as to the intent with which he acted, is not open to the objection that the court did not instruct the jury that the presumption of innocence was with the respondent.

Error to Charlevoix. (Ramsdell, J.) Argued November 13, 1890. Decided November 21, 1890.

Respondent was convicted of murder, and sentenced to State prison for life. Conviction affirmed. The facts are stated in the opinion.

*W. A. Norton,* for respondent.

*B. W. Huston,* Attorney General, and *F. E. Fogg,* Prosecuting Attorney, for the people.

Morse, J. The respondent was convicted of the crime

83 Mich—18.

of murder in the first degree, in the circuit court for the county of Charlevoix.

The evidence shows that the respondent and Turner (the deceased) were traveling about the country together, operating a gambling game called "Trivola." While at East Jordan, they became engaged with three others, Byers, Passage, and Stoneburner, in a game of poker, in the rooms of one James Shear. During the play the respondent charged Turner with cheating,—putting a hand up, or something of that kind,—and angry words passed between them. Harper left the room and went out upon the street. After a short time he went into a hardware store and purchased a revolver, loaded it, and went back to the room where the others were still playing cards. He was gone from the room in all about an hour. Soon after he entered the room, he pulled out the revolver, and, pointing it toward Turner, demanded that Turner count out to him upon the table the money he had lost in the game to Turner, as he claimed, by Turner's cheating. He said:

" You count my money out right on this table, and you haven't got but a minute to do it in."

Turner shoved back from the table, and had raised partially up, when the revolver was discharged in the hands of the respondent. There was some testimony that Turner, as he shoved back from the table, attempted to put his hand in his hip pocket.

The theory of the respondent, and his testimony, was that he did not intend to kill or shoot Turner, but to scare him into the payment back to him of the money claimed by him to have been won by Turner's cheating; that Byers, who was sitting near where respondent was standing, raised up out of his chair, and, in so doing, hit the revolver, or the arm of respondent, and the pistol

was thereby accidentally discharged. This theory was partially corroborated by the testimony of Byers. In the closing argument of the prosecuting attorney to the jury, in referring to this testimony, he said that, although Byers was the people's witness, and the prosecution were obliged to put him on the stand, they were not bound by his statements, except in so far as they were believed to be true. This statement is assigned as error. We find, however, no cause for complaint as to this statement. Byers was one of the men in the room at the time of the shooting, and the prosecuting attorney was in duty bound, under our decisions, to swear him as a witness on behalf of the people in the case. The people could not be concluded by his statements, however. It was for the jury to ascertain and determine, from the testimony of all those present at the shooting, where the truth was, and whether the shot was fired by design or accident. It would have been proper for the court to have instructed the jury that the people were not bound by Byers' testimony; and, therefore, no harm was done the respondent by the statement of the prosecuting attorney to the same effect.

Before the court instructed the jury he said:

"Some requests have been handed to me to charge upon some branches of the case. These requests are in the handwriting of the attorneys, and, by lamp-light, they will be much better able to read to you than I. I therefore turn them over to them to read to you, and you will regard them as being charged by the court, and the law in the case the same as though they had been charged by myself. After you hear them, I shall charge you directly and generally upon the law of the case, and, in some respects, for the purpose of modifying some of the requests now granted at the request of the parties."

The requests referred to were then read by the attorneys, without objection. The court then proceeded with his general charge.

It is claimed that, in saying—

"After you hear them, I shall charge you directly and generally upon the law of the case, and, in some respects, for the purpose of modifying some of the requests now granted at the request of the parties,"—

The circuit judge threw doubt and uncertainty over all of the requests to charge so read, causing the jury to put but little confidence in the defendant's requests so read, and to wait for the court's general charge before undertaking to form any opinion upon the law contained in the requests. It would have been better practice to have modified such requests as the court intended to vary or explain in immediate connection with each of such requests; but no objection to this method was made at the time, and defendant's attorney acquiesced in it. Furthermore, it must be presumed that the jury was composed of men of average intelligence; and we are satisfied from the reading of the whole charge, including the requests, that the jury were not misled thereby in the law of the case, nor the respondent prejudiced by this action of the court below.

It is also alleged that the circuit judge committed error in his abstract definition of the crime of manslaughter,— that it was neither complete nor correct. But, if this be admitted, the respondent was not harmed by it. The court specifically instructed the jury as follows:

"If you should find from the evidence in the case that the defendant had no intention, under any circumstances, of killing the deceased, but only intended to frighten him by the use of the revolver, in compelling him to deliver over that which he thought was his own, but, by some accident during the operation, the gun went off, and the deceased was accidentally killed in that manner, then the defendant is guilty of manslaughter, because the law will not permit a man to take a loaded weapon, and use it in that manner, even to get that which is his own."

This was the theory of the respondent. It was not

claimed upon the trial that he was guiltless, but that he was only guilty of manslaughter, because he had no intent to shoot, but meant to freighten Turner, and the killing was caused by an accidental discharge of the weapon. The case being thus plainly put to the jury upon his own theory, with the instruction that, if such theory was found to be true, he was guilty of manslaughter, any defect in the technical definition of manslaughter could have had no weight against the respondent.

The general charge of the court is also attacked as objectionable in that it gives undue prominence to some of the testimony, to the prejudice of the respondent; and in speaking of the intent of the defendant, to the effect that, while the accused knew best as to his own intent in the shooting, still such intent must be found from the facts in the case, and, if his statements were found to be inconsistent with his conduct subsequent and prior to the killing, the jury should take his statements with such weight as they might appear to have under such inconsistent circumstances; and also in telling the jury that their verdict should be one that would satisfy their consciences that they had done justice to the people, and, under their oaths, what they were required to do,—

"That is, you have well and truly tried and true deliverance made between the people of this State and the prisoner at the bar. If you bring in such a verdict the people will be satisfied and you will be satisfied."

We think the charge not open to serious objection in any of these particulars. It is claimed that the latter clause was calculated to impress the jury with the idea that they must render a verdict to satisfy the people, and might also be regarded as an intimation against the accused. What the court meant, and what the jury would naturally understand, was that, if they arrived at their verdict upon their consciences and their oaths, they

would do their whole duty in the premises, and that the people would be satisfied, whatever the outcome was. This was only a repetition of the doctrine well settled in this State, that, in a criminal prosecution, the people are not a party to the suit in the sense that the plaintiff is in a civil action, but that they stand unbiased between the law and the accused, seeking only justice fairly obtained.

The only remaining objection is that the court did not instruct the jury that the presumption of innocence was with the respondent.[1] The court, on request of respondent's counsel, charged the jury as follows:

" In considering the question of intent with which the defendant acted at the time Turner was shot, you will apply the same rule as in reference to other points in the case, with reference to allowing the defendant the presumption of innocence, and he is entitled to the benefit of any reasonable doubt you may entertain as to the intent with which the defendant acted. No criminal intent can be presumed, except such as can be fairly presumed from the evidence. As to the conduct of the defendant relating to the act charged as criminal, the purpose of permitting the defendant to testify in his own behalf is precisely this: To permit him to make his own defense, and as much with reference to the question of intent with which he acted as to other facts."

As it was not contended that respondent was innocent of any crime, but admitted that, from his own story, he was guilty of manslaughter, and as it is apparent from the record that whether or not he was guilty of a greater crime than manslaughter depended upon his intent, the presumption of innocence in favor of respondent, as applicable to this case, was fully and clearly enough stated.

It follows that the judgment of the lower court must be affirmed.

The other Justices concurred.

---

[1] Counsel for respondent cited *People v. Macard*, 73 Mich. 15.